**STATE of Maine**

v.

**John R. GRANT.**

Supreme Judicial Court of Maine.

Argued March 5, 1980.

Decided Aug. 6, 1980.

Michael Povich, Dist. Atty., Ellsworth, Charles K. Leadbetter, (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Markos & Roy, Peter R. Roy, (orally), Ellsworth, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.*

GODFREY, Justice.

Indicted for attempted murder with a firearm, 17–A M.R.S.A. §§ 152, 202(1)(A) (as amended by P.L.1975, ch. 740, §§ 36, 40), aggravated assault with a firearm, 17–A M.R.S.A. § 208(1)(B) (as amended by P.L. 1975, ch. 740, § 43), criminal threatening with the use of a firearm, 17–A M.R.S.A. § 209 (Supp.1979) and reckless conduct with the use of a firearm, 17–A M.R.S.A. § 211 (Supp.1979), John R. Grant was convicted of all four offenses after a jury trial in Superior Court, Hancock County. On appeal, he asserts that the trial justice erred in refusing to instruct the jury on attempted criminal homicide in the 4th and 5th degree and in denying his motion for a change of venue made during the jury selection process. Finding no error, we deny the appeal.

This appeal is from the defendant's third jury trial for the offenses listed above. He was convicted on all four counts at his first trial and appealed the convictions to the Law Court. We sustained his appeal in *State v. Grant*, Me., 394 A.2d 274 (1978).[1] On remand, a second jury trial began on

---

* Justice Roberts sat at oral argument, but participated no further.

1. We sustained the appeal because of the state's cross-examination of the defendant as to whether he knew he was violating gun control regulations in Maine and other states. Admission of that testimony was erroneous because there was no rational nexus between wilful violations of gun control regulations and proof of criminal intent requisite to convict defendant of any of the four crimes charged.

May 21, 1979. The following day a mistrial was declared because the jury foreman had independently visited the scene of the crime.

The third trial began on September 17, 1979. Testimony showed that the defendant was in the lounge at the Seawall Dining Room in Southwest Harbor on August 20, 1977, with a group of people, including George Henderson, Charlene Cross, and Sally Graves. Grant was loud and rowdy. When another patron, Georgia Washburn, went up to the jukebox, Grant pinched her. After Grant pinched her a second time, a scuffle broke out between Grant and Georgia's male companion, Claude Bolduc. They fell on a table, spilling drinks and knocking down chairs. The owner of the restaurant quickly broke up the scuffle.

As Officer Nicholson of the Southwest Harbor Police was leaving the station house to go on duty at eleven o'clock that evening, he was approached by one Dreyfous, who told him that Grant was causing trouble at the Seawall Dining Room and that he ought to investigate it. Dreyfous said he thought his wife's leg had been broken in the scuffle at the restaurant.

Nicholson went to the restaurant, encountering Bolduc in the parking lot. Bolduc said that he was going inside the restaurant to punch John Grant because Grant had insulted his girlfriend. Nicholson convinced him to go instead to the police station and file a complaint against Grant.

Inside, Nicholson approached Grant and told him he would like to ask a few questions. Grant wanted to know why and whether he was under arrest. Testimony as to what happened next was conflicting. The jury could have rationally found from the testimony that Grant, accompanied by the others in his group, went with Nicholson to a back room. Either there, or on the way there, a scuffle broke out between Grant and Nicholson. Some of Grant's companions also took part in the scuffle. The entire group moved out to the parking lot. Officer Nicholson had Grant up against a car and was trying to put handcuffs on him when Henderson jumped on Nicholson and Grant broke free. Grant went back into the restaurant while Henderson and Nicholson struggled. Grant returned outside and approached the two with a gun held in both hands pointed in the direction of Nicholson and Henderson. Grant fired once, hitting Henderson in the stomach. Nicholson then took his gun out of his holster and pointed it at Grant. Both fired, almost simultaneously. Grant then threw down his weapon. Nicholson was grazed on both his hand and buttocks, though possibly by the bullet that struck Henderson. Later, Grant told Henderson that he had not meant to shoot him but intended to shoot the police officer.

Grant testified as follows: that when he went from the parking lot back into the restaurant, he intended to retrieve his coat and leave. He put his coat on and left the restaurant from the same door he had just entered. He had his hands in his coat pockets, and his gun was in the right pocket. When he was in the parking lot again, Officer Nicholson approached him and said "By Jesus, you are going with me." Nicholson then reached for his gun. Fearing for his own safety, Grant fired his gun to the side of Nicholson, intentionally missing him because he hoped this "would bring him out of whatever state he [Nicholson] was in". The gun was still in his pocket when he fired. He then perceived that he had accidentally shot Henderson. Shortly thereafter, Nicholson fired a shot at Grant, and Grant fired a second time, a split second later, toward the opposite side of Nicholson. Grant then threw down his gun.

The jury returned a verdict of guilty on each of the four counts, and judgments of conviction were entered on the verdicts.

I.

The defendant asserts that the presiding justice erred by refusing to instruct the jury on 4th and 5th degree attempted homicide as lesser included offenses under the charge of attempted second degree homi-

cide.[2] Defendant objected to this refusal at trial.

The defendant's theory of the case was that he acted in self-defense, though perhaps "imperfectly" in that his belief that deadly force was necessary may have been unreasonable.[3] If he acted justifiably in self-defense, he was not guilty of attempted homicide. If he acted with an "imperfect" self-defense, he cannot be held criminally liable for any crime requiring intention or knowledge of the actor, but he can be held responsible for a crime for which recklessness or criminal negligence suffices as the culpable mental state. 17–A M.R.S.A. § 101(1) (second sentence) (Supp.1979).[4] As the criminal code stood at the time of the incident in question, fourth degree homicide required recklessness and fifth degree homicide required negligence. Since defendant had generated the issue of an imperfect self-defense,[5] the defendant contends that the jury could have convicted him of attempted 4th and 5th degree homicide if they believed his testimony.

Though conceding that "attempted manslaughter" is a logical impossibility, *State v. Howard*, Me., 405 A.2d 206, 212 (1979), defendant argues that in the context of unreasonable use of deadly force in self-defense, the crime of attempted 4th or 5th degree homicide should exist. The defendant points out that if Nicholson had been killed and a jury had found that the appellant was acting in self-defense, though unreasonably, the jury could have rationally found him guilty of 4th or 5th degree homicide if they also found that his holding the unreasonable belief was reckless or negligent. 17–A M.R.S.A. § 101(1). It is an absurd result, defendant asserts, to hold, when the killing was only attempted instead of accomplished, that a defendant cannot have the benefit of an instruction on 4th and 5th degree homicide.

The defendant's argument misconceives the role that justification serves within the criminal code. 17–A M.R.S.A. ch. 5 (§ 101 *et seq.*). Self-defense, like other forms of justification, constitutes a defense to a charge of crime. It is not a crime or an element of a crime, and it cannot cause a crime to exist where one otherwise would not.

In *State v. Sprague*, Me., 394 A.2d 253, 258 (1978), this Court said that self-defense could be a defense to the crimes of 4th or 5th degree homicide and that the recklessness or negligence necessary to constitute 4th or 5th degree homicide could result from unreasonableness in believing deadly force was necessary. However, *Sprague* dealt with homicide, not attempted homicide. Although the recklessness or negligence may come about from holding the unreasonable belief that deadly force is justified (instead of the actual reckless firing of a gun, for example), an actor still cannot "intend" to act recklessly or negligently. To be guilty of criminal attempt, a person must act with the intent to complete the commission of the crime. 17–A M.R.S.A. § 152. Even if one intends to use deadly force to kill in self-defense and the belief that such force is justified is unreasonable, the actor does not "intend" to cause recklessly the death of another human being.

■ It was logically impossible for Grant to attempt to commit 4th or 5th degree homicide as defined in former code sections 204 and 205. An "imperfect" self-defense, coming within the scope of the last sentence of subsection 1 of section 101 of the code,

---

**2.** 17–A M.R.S.A. § 204, as amended by P.L. 1975, ch. 740, § 41, and § 205, as enacted by P.L.1975, ch. 499, § 1. Both sections were repealed, and section 204 was replaced, by P.L. 1977, ch. 510, §§ 41, 42.

**3.** *See* 17–A M.R.S.A. §§ 101, 108 (Supp.1979). The second sentence of section 101 provides as follows:

If a defense provided under this chapter is precluded solely because the requirement that the actor's belief be reasonable has not been met, he may be convicted only of a crime for which recklessness or criminal negligence suffices, depending on whether his holding the belief was reckless or criminally negligent.

**4.** *See* note 3, *supra.*

**5.** The trial judge charged the jury on "imperfect" self-defense. 17–A M.R.S.A. § 101.

cannot make attempted 4th or 5th degree homicide any less a logical impossibility. Since attempted 4th or 5th degree homicide is not possible, the trial justice did not err in refusing to give the requested instruction.

The result is neither anomalous nor unfair to the defendant. In any case to which the second sentence of 17–A M.R.S.A. § 101(1) (imperfect self-defense) is applicable, the defendant must be acquitted of attempt. An "attempt" requires intent to complete the commission of a crime. 17–A M.R.S.A. § 152. If the second sentence of section 101(1) is applicable, defendant is not liable for a crime requiring more than recklessness or criminal negligence as the requisite culpable mental state. 17–A M.R.S.A. §§ 10, 101(1). Hence, "attempt", which by definition requires "intent" and not mere recklessness or negligence as the culpable mental state, can never be established in a situation where the provisions of the second sentence of 17–A M.R.S.A. § 101(1) are applicable.

In this case, if the jury had found an imperfect self-defense, Grant could not have been convicted of attempted homicide in any degree. The jury had been given appropriate instructions with respect to second degree homicide, self-defense, attempt, and the effect of section 101 which were adequate in sum to enable them to acquit Grant of any attempted homicide had they believed his version of the incident. There was sufficient evidence of record from which the jury could have found beyond a reasonable doubt that Grant's conduct did not come within any provision of chapter 5 of the Code relating to justification.

## II.

After remand from the Law Court vacating the judgment entered after the first trial, the defendant filed a motion for change of venue pursuant to Rule 21, M.R. Crim.P. A justice of the Superior Court ordered the hearing on the motion to be continued to the time of jury selection and voir dire. The docket entry reads:[6]

> It does not appear that pre-trial publicity to the time is so persuasive and intensive as to warrant a per se ruling. The defendant's rights are preserved by a continuance as above stated.

On March 29, 1979, the state filed a motion for change of venue. The docket entry on March 30, 1979, reads:

> Hearing on Motion for Change of Venue. The Court cannot order change of venue to Washington County over objection of defendant. Motion denied.

At the third trial, during the jury selection process, the appellant made an oral motion for a change of venue. The reason stated for the request was an article that had appeared that morning on the Hancock County page of the Bangor Daily News. The article mentioned the defendant's conviction after the first trial and inaccurately described the reasons for reversal of that conviction as "procedural". The motion was denied by the trial justice. He specifically found that only one member of the panel even had knowledge of the article and that he had only read the heading, not the article.

In his brief on appeal, defendant contends that a change of venue was particularly necessary in this case. He argues that there was extensive coverage in the local news media from the time of the incident up to the day of the third trial; that, on the day of trial, an article appeared noting his prior conviction and the reversal of that conviction on "procedural" grounds; and, finally, that this was the third trial of the defendant in the same small town. At oral argument on appeal, defendant asked, essentially, for a per se rule that on the third trial of a criminal defendant for the same offense a new venue should be granted.

When defendant moved for a change of venue during the jury selection process, he based his motion only on the newspaper article that had appeared that morning.

---

6. The motion, the transcript of the hearing before the Superior Court justice, and the jus-   tice's order were not included as part of the record on appeal.

He did not then base his motion on any of the "extensive coverage" which he says had occurred before that day or on the fact that this was the defendant's third trial in Ellsworth. Indeed, the defendant appears to have opposed the state's motion for a change of venue brought shortly before the second trial.

There is nothing in the record, moreover, concerning this "extensive" press coverage before the day of the third trial. Other than the docket entries, there is nothing in the record to show the substance of the hearings on the motions for change of venue. Therefore, our review of the denial of the motion for change of venue is restricted to whether the motion should have been granted solely because of the article which appeared in the Bangor Daily News on the morning of the third trial.

■ Error claimed because of a denial of a motion for a change of venue has been viewed by this Court as directed to both alleged violation of constitutional due process and abuse of discretion. *State v. Clark,* Me., 386 A.2d 317 (1978); *State v. Littlefield,* Me., 374 A.2d 590 (1977). A due process violation can occur when the publicity surrounding the case is of such an extensive and invidious nature as to constitute prejudice per se, in which case actual prejudice need not be shown. However, when circumstances endangering local impartiality do not reach that level, defendant must show actual prejudice among the venire persons. *State v. Littlefield, supra* at 594.

■ After careful consideration, the trial justice determined that the article in question was not prejudicial per se and did not cause any actual prejudice to the defendant. The article was not so inherently and pervasively prejudicial as to require a change of venue without a showing of actual prejudice.[7] Although the article mistakenly referred to the reversal of the first conviction as procedural, it was not invidious or inflammatory in effect. The justice specifically found that no venire person had read

the article, and nothing in the record suggests any actual prejudice of any member of the panel.

The trial judge's denial of the motion for change of venue was consistent with the requirements of state law and was within the permissible range of discretion recognized by this Court. *See State v. Clark, supra,* at 321; *State v. Littlefield, supra,* at 595–96.

The entry is:

Appeal denied.

Judgments affirmed.

All concurring.

---

7. For cases holding that the pre-trial or trial publicity was so invidious or inflammatory as to constitute prejudice per se, *see Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).