### STATE of Maine

### v.

### James H. SAVAGE, Jr.

Supreme Judicial Court of Maine.

Argued March 19, 1990.
Decided April 17, 1990.

---

James E. Tierney, Atty. Gen., Garry L. Greene, Asst. Atty. Gen., (orally), Augusta, for State.

Michael J. Welch (orally), Hardy, Wolf & Downing, P.A., Lewiston, for defendant.

Before McKUSICK, C.J., and
ROBERTS, GLASSMAN, CLIFFORD,
HORNBY and COLLINS, JJ.

ROBERTS, Justice.

James H. Savage, Jr. appeals his conviction for murder following a jury trial in the Superior Court (Cumberland County, *Fritzsche, J.*). Savage primarily challenges the jury instructions relating to self-defense and adequate provocation manslaughter. Finding no error, we affirm the judgment.

Savage was a lead singer and rhythm player in a blue grass band called the Shilo Mountain Boys, led by the victim, C. Sumner Morrill. Shilo Mountain Farm was the name of the Morrill home in North Baldwin. Savage, who was married, had an affair with Morrill's wife that lasted until October 1987. During the affair Savage received personal letters and tapes from Mrs. Morrill. On November 7, 1987, Savage and his wife went to Shilo Mountain Farm. Savage brought a loaded revolver, a tape recorder and copies of letters and tapes from Morrill's wife. As a result of an earlier confrontation, Savage was aware that Morrill did not wish to discuss Savage's relationship with Morrill's wife. After Morrill and Savage had settled some business matters, Savage placed the tape recorder on the table and said he wanted Morrill to hear something. Morrill said he did not want to hear it, he knew all about it, this was his home and that he would have to get his "persuader." Savage fired four shots at Morrill, the first two in his chest, a third through the side and a fourth

through his back as he was kneeling on the floor. Savage testified that Morrill had previously threatened to kill Savage and that he thought Morrill referred to a gun when he mentioned "persuader."

 Savage challenges the jury instructions in several respects, some of which were not preserved by proper objection at trial. M.R.Crim.P. 30(b). We conclude, however, that the court committed no error. First, he argues that the evidence was insufficient to warrant the instruction given, pursuant to 17–A M.R.S.A. § 108(2)(C), that Savage was not justified in using deadly force if he knew that he could with complete safety comply with a demand by the victim that he abstain from doing something that he was not obliged to do. Contrary to Savage's contention, the evidence justified the court's instruction concerning the victim's demand that Savage abstain from referring to Savage's relationship with the victim's wife. Indeed, Savage himself testified "[the victim] says I don't want to talk, there's nothing to talk about it, damn it, he says and that is the end of it, real firm, real belligerent and real right—outright." Moreover, the instruction, as given, was not vague. Rather, the court addressed specifically the victim's alleged demand concerning the playing of tapes, showing of letters or discussion of Savage's relationship with the victim's wife.

Savage also contends that the court confused the jury with inconsistent instructions concerning self-defense and adequate provocation manslaughter. We disagree. The court carefully separated the various parts of the instruction to avoid confusion. The court explained that, as one means of negativing the defense of self-defense, the State would have the burden of proving beyond a reasonable doubt that Savage, intending to harm the victim, provoked the victim to use deadly force against him. Later, as the final substantive instruction, the court presented the only issue on which Savage had the burden of proof. The court instructed that the murder, if proven, could be reduced to manslaughter if Savage satisfied the jury by a preponderance of the evidence that Savage acted out of extreme anger or extreme fear caused by adequate provocation. We see no reason to believe that the jury confused the two issues.

Savage requested at trial an instruction based on what he asserted was the State's failure to prove which of the four shots was fatal. His argument was based upon a misinterpretation of the evidence. A forensic pathologist testified that the victim died of hemorrhagic shock as a result of all four bullet wounds. The requested instruction, therefore, was properly denied. Two additional contentions relating to the denial of bail and a request for a jury view of the scene are without merit.

The entry is:

Judgment affirmed.

All concurring.