2012 ME 40

**STATE of Maine**

v.

**William A. HANAMAN.**

Supreme Judicial Court of Maine.

Argued: Feb. 16, 2012.
Decided: March 22, 2012.

Robert A. Levine, Esq. (orally), Portland, for appellant William Hanaman.

William J. Schneider, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] William A. Hanaman appeals from a judgment of conviction for intentional or knowing murder, 17–A M.R.S. 201(1)(A) (2011), entered in the Unified Criminal Docket (Cumberland County, *Warren, J.*) following a jury trial. Hanaman contends on appeal that the court erred in refusing to instruct the jury on the affirmative defense of adequate provocation to reduce the murder charge to manslaughter, pursuant to 17–A M.R.S. 201(3) (2011);[1] *see also* 17–A M.R.S. 203(1)(B) (2011).

[¶ 2] Hanaman argues that the instruction was generated by the evidence, and that, contrary to the trial court's determination, an adequate provocation instruction was not subsumed by instructions that were given on self-defense or imperfect self-defense. We conclude that the evidence was not legally sufficient to support a jury instruction on the affirmative defense of adequate provocation and affirm the judgment.

## I. CASE HISTORY

■ [¶ 3] Viewing the facts in a light most favorable to the defendant, as we must when reviewing a trial court's determination that the evidence presented at trial did not generate an affirmative defense of adequate provocation manslaughter, the record supports the following facts. *See State v. Bridges,* 2004 ME 102, ¶ 17, 854 A.2d 855; *see generally State v. Barretto,* 2008 ME 121, ¶ 4, 953 A.2d 1138.

[¶ 4] William Hanaman, then fifty-one, and the victim, then forty-seven, began dating in late 2008. The victim subsequently moved in with Hanaman, but the relationship was a volatile one. Hanaman asserts that the victim was assaultive and verbally abusive toward him and that she began to steal from him, possibly to support her addiction to prescription drugs and her cocaine and marijuana use. In October 2009, Hanaman was arrested for domestic violence assault upon the victim, 17–A M.R.S. 207–A (2011), after she was found crying and limping along the street in the middle of the night with an open, bleeding cut and welt over one eye.

[¶ 5] Hanaman was released on bail, with a bail condition that he have no contact with the victim. Hanaman continued to have contact with the victim, sometimes at her initiation. Hanaman maintained that the victim's injuries resulted from an accident that occurred when he and the victim were arguing over the victim's prescription drug abuse. In preparation for his defense on the domestic violence assault charges, Hanaman collected the victim's empty prescription pill bottles and cut straws and saved them to offer as evidence at trial of the victim's drug-related combative nature.

[¶ 6] In early November 2009, the day before Hanaman's arraignment on the domestic violence assault charges, Hanaman picked the victim up and drove her to Portland so that she could talk to the District Attorney about having the assault charges against him dropped. When the victim failed to return, Hanaman believed that she had lied to him about trying to get the charges dropped, and he became upset. He went to a bar, drank, and used cocaine for the first time in over twenty years. Hanaman failed to appear at his arraign-

---

1.  17–A M.R.S. 201(3) (2011) states that "[i]t is an affirmative defense to a prosecution [for intentional or knowing murder] that the person causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation." If the affirmative defense is proven, it reduces murder to manslaughter. *See* 17–A M.R.S. 203(1)(B) (2011).

ment the next day, and a warrant was subsequently issued for his arrest. As a result of these events, Hanaman decided that he had to stop seeing the victim.

[¶ 7]  On November 10, 2009, Hanaman happened upon the victim and, even though the no-contact bail condition was still in effect, picked her up. They drove to his apartment so that they could talk about ending their relationship and she could move her things out. Neither Hanaman nor the victim used alcohol or, apparently, drugs during this conversation.[2]

[¶ 8]  According to Hanaman's testimony, Hanaman left the room and, when he returned, the victim was in the bedroom holding the plastic bag containing the evidence of the victim's drug use that Hanaman was planning to present in his defense at his domestic violence assault trial. Hanaman reached to take the bag from the victim's hand, telling her that he needed it for court, and the bag ripped open as they fought over it. Hanaman testified that he then saw "anger in" the victim's face and saw her reach back with something "shiny," but unidentifiable, in her hand that she raised over her head. Hanaman "felt sudden fear" and his "system just ... shut down." Hanaman stated that he thought the victim was going to stab him. Hanaman testified that he "blacked out" at that point and when he came to, he was sitting in his truck in a parking lot some distance from his home with blood on his clothes. Although he claimed that he did not remember having done it, Hanaman agreed at trial that he must have taken the shiny object, a knife, away from the victim and used it to stab her. The victim was 5′2″ and 142 pounds. Hanaman was 5′9″ and 175 pounds.

[¶ 9]  After coming out of his blackout in his truck, Hanaman returned to his apartment, saw the victim's body, started drinking alcohol, and took prescription pills. He wrote a suicide note, then unsuccessfully attempted to kill himself. When Hanaman was found the next morning, he was taken to the hospital where he was put on suicide watch and had continuous police and nursing-staff supervision.

[¶ 10]  Hanaman told a hospital worker that (1) he had been upset with the victim for stealing money from him and from his niece; (2) "he just couldn't take it anymore"; (3) the victim knew how to push his buttons; (4) he knew this would happen; (5) he had been using a lot of alcohol and started using drugs within the past two days or so; (6) he did something he was not sure he could live with; and (7) he "should have just walked away a long time ago." He never told the hospital worker that the victim had threatened him with a knife. Hanaman's sister later testified, however, that he told her at the hospital that the victim had come after him with a knife, although she did not report this conversation for a month.

[¶ 11]  A medical examination revealed that Hanaman stabbed the victim eight times and that the victim had sustained defensive wounds. Hanaman sustained no injuries other than a couple of minor abrasions and small bruises.

[¶ 12]  Hanaman was charged with one count of intentional or knowing murder, 17–A M.R.S. 201(1)(A), and a jury trial was held. Hanaman testified at trial that he became angry at the victim and at himself after he had returned to the house after killing her. Hanaman testified repeatedly,

2.  A toxicology report confirmed that the victim had no alcohol and had a therapeutic level of oxycodone, low levels of the metabolites of Darvon and of cocaine, and byproducts of marijuana in her bloodstream at the time of her death, though it is possible that she had some cocaine in her blood at the time of her death.

however, that, although he needed the bag of pill bottles that the victim found in his house for his assault trial, he did not hate the victim and was not angry with her at the time he killed her.

■ [¶ 13] The court instructed the jury as to intentional or knowing murder, reckless manslaughter,[3] self-defense, and imperfect self-defense.[4] Hanaman requested that the court also instruct the jury on the affirmative defense to murder of adequate provocation, which the court refused. The court concluded that the jury would only consider an adequate provocation defense if the State first proved, beyond a reasonable doubt, that Hanaman had not acted in self-defense, and that the record could not support a claim of adequate provocation in the event that the State met its burden of disproving self-defense. The court also concluded that the facts that would support adequate provocation were the same ones that would relate to self-defense and, under the facts of this case, "adequate provocation is subsumed by self-defense." The court stated that it would confuse the jury if instructions were given for both self-defense and adequate provocation.

[¶ 14] After deliberating for two days, the jury returned a verdict of guilty on the murder charge, and the jury was polled. Hanaman filed a motion for a new trial based on the court's refusal to instruct the jury on adequate provocation, which motion was denied after a hearing for reasons previously discussed and "on the ground

that" the instruction "wasn't adequately generated." Hanaman was subsequently sentenced to a term of forty years. Hanaman brings this appeals.[5]

## II. LEGAL ANALYSIS

[¶ 15] Hanaman argues that the court erred in refusing to instruct the jury on the affirmative defense of adequate provocation. Hanaman asserts that the evidence admitted at trial was sufficient to support a determination that he was under the influence of extreme anger or extreme fear brought about by what he claims was the victim's provocation of threatening his life with the "shiny object." Hanaman further contends that the court erred when it determined that an adequate provocation instruction was subsumed by the instructions on self-defense and imperfect self-defense. He asserts that theories of self-defense and adequate provocation are not mutually exclusive, that an adequate provocation instruction is not sufficiently covered by a self-defense instruction, and that the jury would not have been confused if it had been properly instructed as to both self-defense and adequate provocation.

■ [¶ 16] We will vacate a judgment based on a denied request for a jury instruction if the appellant demonstrates that the requested instruction (1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave.

---

3. The court instructed the jury on manslaughter pursuant to 17–A M.R.S. 203(1)(A) (2011), but not 17–A M.R.S. 203(1)(B).

4. If a defendant acted with imperfect self-defense, in that it may have been unreasonable for him to believe that deadly force was necessary, then the defendant "cannot be held criminally liable for any crime requiring intention or knowledge of the actor, but he can be held responsible for a crime for which

recklessness or criminal negligence suffices as the culpable mental state." *State v. Grant*, 418 A.2d 154, 156 (Me.1980); *see also* 17–A M.R.S. § 101(3) (2011); *State v. Sullivan*, 1997 ME 71, ¶¶ 1 n. 1, 8, 695 A.2d 115.

5. Hanaman filed an application for leave to appeal from his sentence, M.R.App. P. 20, which the Sentence Review Panel denied.

*State v. Warmke*, 2005 ME 99, ¶ 10, 879 A.2d 30. In addition, the court's refusal to give the requested instruction must have been prejudicial to the requesting party. *Id.*

### A. Generation of the Instruction By the Evidence

■ [¶ 17] Assuming for purposes of this appeal that the requested jury instruction did or would have stated the law correctly, we consider the second part of the four-part test—whether Hanaman has demonstrated that the requested instruction on adequate provocation manslaughter was generated by the evidence. *See State v. Neild*, 2006 ME 91, ¶ 9, 903 A.2d 339 ("Whether a jury should be instructed on a particular defense in a criminal case almost always depends on whether the evidence presented at trial generates the defense.").

■■ [¶ 18] It is the court, in the first instance, that must determine whether the evidence is legally sufficient to generate the adequate provocation manslaughter defense. *Warmke*, 2005 ME 99, ¶ 12, 879 A.2d 30. Viewing the evidence in a light most favorable to the defendant, the court must determine as a question of law whether there is any evidence from which the jury could find provocation and other elements that would reduce the offense to manslaughter. *Id.; Bridges*, 2004 ME 102, ¶ 15, 854 A.2d 855. "The test for measuring the sufficiency of the evidence is whether a jury could rationally have found that the defense was established by a preponderance of the evidence." *Warmke*, 2005 ME 99, ¶ 12, 879 A.2d 30.

[¶ 19] A charge of intentional or knowing murder, 17–A M.R.S. § 201(1)(A), may be reduced to manslaughter if the defendant caused the victim's death "while under the influence of extreme anger or extreme fear brought about by adequate provocation." 17–A M.R.S. §§ 201(3), 203(1)(B); *Warmke*, 2005 ME 99, ¶ 11, 879 A.2d 30. Provocation is adequate only if (1) it is not induced by the defendant, and (2) it is objectively reasonable for the defendant to react to the provocation with extreme anger or extreme fear. 17–A M.R.S. § 201(4) (2011); *State v. Pulsifer*, 1999 ME 24, ¶ 13, 724 A.2d 1234. Adequate provocation is an affirmative defense that the defendant must prove by a preponderance of the evidence. 17–A M.R.S. §§ 101(2), 201(3) (2011).

[¶ 20] We consider the elements of the adequate provocation affirmative defense in turn to determine whether evidence in the record could support findings, by a preponderance of the evidence, that (1) Hanaman caused the victim's death while under the influence of extreme anger or extreme fear; (2) Hanaman's extreme anger or fear was brought about by provocation on the victim's part; and (3) the victim's provocation was legally adequate because (i) the provocation was of such a nature that Hanaman's reaction to it with extreme anger or extreme fear was objectively reasonable, and (ii) Hanaman did not induce the provocation.

[¶ 21] It is difficult to view the record here as establishing even a prima facie case that Hanaman felt extreme anger at the time that he killed the victim. Hanaman repeatedly testified at trial that he was not angry with the victim immediately prior to killing her, and one cannot reasonably infer from the record otherwise.

[¶ 22] Likewise, there is scant evidence in the record to support or even suggest a prima facie determination that Hanaman felt extreme fear at the time he killed the victim. Although Hanaman testified that he felt "sudden" fear, this does not support a determination that he felt "extreme" fear. *See State v. Doody*, 432 A.2d 399,

402 (Me.1981) (holding that evidence was entirely lacking even to suggest that the defendant was adequately provoked when he testified that he felt "frustrated, upset, and confused"). The fact that Hanaman testified that his system "shut down" and that he could not remember the event is not sufficient to support a determination that he caused the victim's death as a result of extreme fear.

[¶ 23] "There are few instances when we have recognized conduct as being sufficient to engender extreme anger or fear and mitigate the conduct of a defendant." *Bridges*, 2004 ME 102, ¶ 16, 854 A.2d 855; *see State v. Cumming*, 634 A.2d 953, 957 (Me.1993) ("There are limits on the type of conduct that we will recognize as sufficient to engender extreme anger or fear and mitigate the conduct of the defendant.").

[¶ 24] It would not have been objectively reasonable under the facts of this case for Hanaman to react with extreme fear to the victim's holding a shiny object in a threatening manner. Viewing the evidence in a light most favorable to Hanaman, he saw a shiny object in the victim's hand, but he did not know what it was and did not recognize it to be a weapon, and Hanaman apparently disarmed the victim quickly and without any injury to himself at all. The record does not support a finding that it was reasonable for Hanaman to feel the "extreme fear" required for an adequate provocation instruction in response to the alleged provocation.

[¶ 25] We also conclude that Hanaman failed to produce evidence showing that he did not induce, instigate, or create the event that allegedly provoked extreme anger or extreme fear. *See Warmke*, 2005 ME 99, ¶ 15, 879 A.2d 30; *State v. Lockhart*, 2003 ME 108, ¶ 42, 830 A.2d 433; *Pulsifer*, 1999 ME 24, ¶ 15, 724 A.2d 1234. Hanaman picked the victim up, in violation of bail conditions ordering no contact, and took her back to his apartment to discuss their relationship one week after she failed to have domestic violence assault charges against him dropped. Hanaman was in the process of preparing his defense against those assault charges in which the victim would be the primary witness against him, and he was planning to raise the issue of her drug addiction in his defense. Additionally, immediately preceding the victim's raising a shiny object in her hand, Hanaman was attempting to seize from the victim the plastic bag of the victim's prescription bottles—the victim's own property—thereby causing a struggle to occur.

[¶ 26] The record actually contains substantial evidence to support a finding that Hanaman did instigate or create the situation that resulted in the alleged provocation. *See, e.g., Pulsifer*, 1999 ME 24, ¶ 15, 724 A.2d 1234 (holding that the provocation was not adequate when the defendant had initiated a meeting with the victim to discuss their relationship, thereby "plac[ing] himself in a situation that would arouse his anger and fear"); *State v. Rainey*, 580 A.2d 682, 685 (Me.1990) (holding that the evidence was not sufficient to generate an adequate provocation instruction as a matter of law because the provocation was induced by the defendant who had no legal right to be in the house in which the incidents occurred).

[¶ 27] The court did not err in refusing to give an adequate provocation instruction in this case.

### B. Requested Instruction Sufficiently Covered By Other Instructions

[¶ 28] Hanaman also contends that the court erred when it refused to give an adequate provocation manslaughter instruction because such an instruction was subsumed by instructions on self-defense and imperfect self-defense. We recognize

that both instructions are sometimes given. *See, e.g., State v. Savage*, 573 A.2d 25, 26–27 (Me.1990) (holding that the trial court's careful instructions on self-defense and adequate provocation manslaughter would not have confused the jury). However, it is the rare case in which a fact-finder could find that the State has carried its burden of disproving self-defense and then go on to find, under the same set of facts, that the defendant has nonetheless carried his burden of proving adequate provocation manslaughter.[6] This is not one of those cases. Under the facts of this case, we cannot conclude that the court erred when it determined that self-defense instructions, with a burden of proof more favorable to Hanaman, subsumed an instruction as to adequate provocation manslaughter.

[¶ 29] Hanaman contends that the evidence shows that, after he attempted to seize the bag of drug evidence, the victim adequately provoked him to extreme anger or fear by making a potentially threatening motion while holding a shiny object in her hand, and that her action should be viewed against the backdrop of her history of drug use and combative and assaultive behavior toward Hanaman. Under Hanaman's view of the law, an adequate provocation instruction could be generated virtually any time a person, while under a defendant's attack, attempts to defend himself or herself, and is then killed in the defendant's attack. But self-defense against an attack cannot itself become an adequate provocation that can reduce murder to manslaughter.

---

**6.** An example of a case when there might be a possibility for an adequate provocation instruction and a self-defense instruction would be a parent observing severe abuse of his or her child, confronting the perpetrator, and killing the perpetrator after the perpetrator attacks the parent. The self-defense statute

The entry is:

Judgment affirmed.

provides in relevant part that a person is justified in using deadly force upon another person when the person reasonably believes it necessary and reasonably believes such other person is about to use unlawful, deadly force against the person or a third person. 17–A M.R.S. 108(2)(A)(1) (2011).