MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 84
Docket:      Yor-16-289
Argued:      March 2, 2017
Decided:     May 4, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

MICHAEL J. SIRACUSA JR.

GORMAN, J.

[¶1]  Michael J. Siracusa Jr. appeals from a judgment of conviction for possessing a loaded firearm in a motor vehicle (Class E), 12 M.R.S. § 11212(1)(B) (2014),[1] and unlawfully driving deer (Class E), 12 M.R.S. § 11453(1) (2016), entered by the trial court (York County, *O'Neil, J.*) after a jury trial.  Siracusa contends that the trial court erred in refusing to instruct the jury that it needed to find that he had acted intentionally or knowingly in order to find him guilty of either offense.  We disagree and affirm the judgment.

---

[1]  Title 12 M.R.S. § 11212(1)(B) has since been amended but not in any way that affects this appeal.  P.L. 2015, ch. 327, § 1 (effective Oct. 15, 2015) (codified at 12 M.R.S. § 11212(1)(B) (2016)).

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State as the prevailing party, the following facts were established at trial.  *See State v. Carter*, 2016 ME 157, ¶ 2, 150 A.3d 327.  On November 4, 2014, Siracusa met with four people—including, unbeknownst to him, an undercover game warden—to go hunting in Parsonsfield.  Siracusa and another member of the hunting party took stationary positions near a pit in the woods while the remaining members of the party fanned out and walked toward them in order to move deer in their direction.  After the hunt, Siracusa rode to a residence in the passenger seat of an SUV with a loaded .30-30 lever-action rifle in his lap.  When the SUV pulled into the driveway, Siracusa got out of the vehicle and ejected three live rounds of ammunition from the rifle onto the ground.

[¶3]  On May 5, 2015, the State charged Siracusa with two counts of possessing a loaded firearm in a motor vehicle (Class E), 12 M.R.S. § 11212(1)(B), and one count of unlawfully driving deer (Class E), 12 M.R.S. § 11453(1), to which Siracusa pleaded not guilty.[2]  The court held a jury trial on May 24 and 25, 2016.  After the close of evidence, the court instructed the

---

[2]  The State also charged Siracusa with unsworn falsification (Class D), 17-A M.R.S. § 453(1)(A) (2016); criminal trespass (Class E), 17-A M.R.S. § 402(1)(C) (2016); unlawful possession of moose (Class E), 12 M.R.S. § 11601(4) (2016); and false registration of moose (Class E), 12 M.R.S. §12305(1)(C) (2016).  The State later dismissed those charges.

jury that "[i]n Maine a person commits a crime only if they engage in voluntary conduct. A person acts voluntarily if he acts as a result of a conscious choice."[3] The court then explained the charge of deer driving:

> [T]he State claims—and this is the question that you are going to be required to answer—that on or about November 4th, 2014, in Parsonsfield, Mr. Siracusa did participate in a hunt for deer during which an organized or planned effort was made to drive deer. [A deer drive] is defined as an organized or planned effort to drive deer which requires four or more persons working together to move deer. So that is the charge of illegal driving of deer and the explanation about what deer driving is under Maine law, which involves the four persons *acting in an organized or planned effort* to move deer. . . . And once again, that conduct in that particular count needs to be proven to have been voluntary, which means it was a person's conscious choice to act in that way.

(Emphasis added.) It then explained that, as to the charge of possessing a loaded firearm in a motor vehicle, the jury was required to determine

> whether or not the State has proven . . . beyond a reasonable doubt that on those particular dates in Parsonsfield Mr. Siracusa, while in the motor vehicle, or on a trailer, or other type of vehicle being hauled by a motor vehicle had the [.]30-30 lever-action rifle, which had a cartridge or a shell in the chamber, or in an attached magazine.

The jury verdict form closely tracked the language of each statute.

---

[3] The court apparently purposefully omitted the remainder of the usual jury instruction on voluntariness, which distinguished a conscious choice from "a reflex, seizure or some other act over which he has no conscious control." Alexander, *Maine Jury Instruction Manual* § 6-40 at 6-73 (2016 ed.).

4

[¶4]  After the court instructed the jury but before the jury retired to deliberate,[4] Siracusa requested a jury instruction on specific intent, arguing that the voluntariness instruction was insufficient because "a person could participate in . . . a deer drive unknowingly, but voluntarily" and could "transport[] a loaded firearm in a motor vehicle unknowingly."  After consulting with counsel, the court denied Siracusa's request in part because "the concept [was] covered by the voluntariness instruction."  The jury returned a guilty verdict as to one count of possessing a loaded firearm in a motor vehicle and one count of unlawfully driving deer.[5]  The court entered a judgment on the verdict ordering Siracusa to pay fines totaling $700.  Siracusa timely appealed.

## II.  DISCUSSION

[¶5]  Siracusa contends that the court erred in denying his motion for a jury instruction on mens rea because both the deer driving and firearm offenses are specific intent crimes and the voluntariness instruction was insufficient to prevent the jury from finding him guilty if he acted voluntarily

---

[4]  We note that the court provided an opportunity for counsel to request specific instructions much earlier in the process.  Siracusa did not take that opportunity, instead waiting until after both he and the State had completed their closing arguments and after the court had completed its instructions to request instructions as to the culpable mental state associated with each charge.

[5]  The jury returned a not guilty verdict on the second count of possessing a loaded firearm in a motor vehicle.

but without a culpable mental state.[6]  The firearm offense is a strict liability crime and, therefore, no mens rea instruction was necessary.  Although Siracusa is correct that the crime of driving deer contains a mens rea component, because the court's instructions adequately and correctly conveyed the elements of both crimes to the jury, we conclude that the court did not err in refusing Siracusa's request.

[¶6]  "We review jury instructions as a whole for prejudicial error, and to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law."  *State v. Mahmoud*, 2016 ME 135, ¶ 10, 147 A.3d 833 (quotation marks omitted).  Where the court denied an appellant's request for a jury instruction, we will vacate a judgment if the denial prejudiced the appellant and the appellant "demonstrates that the requested instruction (1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently

---

[6] The legal concepts of voluntariness and mens rea are distinct.  *See State v. Griffin*, 2017 ME 79, ¶¶ 12-17, --- A.3d ---.  The concept of voluntariness relates to the *act* rather than the culpable mental state of a crime.  *See* 17-A M.R.S. § 103-B (2016); *State v. Morrison*, 2016 ME 47, ¶ 9, 135 A.3d 343 ("Involuntary conduct is the result of an uncontrolled physical impetus, rather than a state of mind."); *see also* 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.1(c) at 425-29 (2d ed. 2003).  In denying Siracusa's request for a jury instruction on mens rea, the court therefore incorrectly stated that "the concept [of a culpable mental state was] covered by the voluntariness instruction" it had already given to the jury.  Although we affirm the court's denial of Siracusa's request, we do so on different grounds.

covered in the instructions the court gave" (the *Hanaman* factors). *Id.* (footnote omitted) (quotation marks omitted). Further, "[w]e construe the statute defining an offense de novo to determine what elements constitute the crime" first by examining its plain language. *State v. Elliott*, 2010 ME 3, ¶ 29, 987 A.2d 513.

A. Possession of a Loaded Firearm in a Motor Vehicle

[¶7] We find Siracusa's argument that there is a mens rea attached to or incorporated in 12 M.R.S. § 11212 unpersuasive. After examining the plain language of the statute, we conclude that possession of a loaded firearm in a motor vehicle is a strict liability crime for which the State need not prove a culpable mental state. *See State v. Fowler*, 676 A.2d 43, 45 (Me. 1996) (explaining that the State need not prove mens rea where "it is not expressly set forth in the governing statute and there is a legislative intent to impose liability without proof of a culpable state of mind"); *State v. Chadwick*, 119 Me. 45, 48, 109 A. 372 (Me. 1920) ("[I]f a criminal intent is not an essential element of a statutory crime[,] it is not necessary to prove any intent in order to justify a conviction. . . . The only fact to be determined in such cases is whether the defendant did the [prohibited] act." (citation omitted)); *see also* 17-A M.R.S. § 34(4) (2016).

[¶8]  This conclusion comports with our decisions regarding similar unlawful possession offenses within Maine's fish and game laws.  *See, e.g.*, *Fowler*, 676 A.2d at 45; *State v. Goyette*, 407 A.2d 1104, 1112 (Me. 1979) ("[C]riminal intent in the nature of a specific intention to violate the law was not made an essential element of the crime of possession, and honest intentions or good faith may not be successfully advanced in justification of what the statute prohibits absolutely.").

[¶9]  Because section 11212 is a strict liability statute, the court did not err or prejudice the defense in refusing to instruct the jury that it must find that Siracusa acted knowingly or intentionally in order to find him guilty of unlawfully possessing a loaded firearm in a motor vehicle.  *See Mahmoud*, 2016 ME 135, ¶ 10, 147 A.3d 833.

B.    Driving Deer

[¶10]  Turning to the deer driving offense, we agree with Siracusa's contention that driving deer, as set out in 12 M.R.S. § 11453, is not a strict liability crime.  We conclude, however, that the language of the statute itself is sufficient to inform a fact-finder as to the culpable mental state required for conviction.

[¶11]  Title 17-A M.R.S. § 34(1) (2016) states:

A person is not guilty of a crime unless that person acted intentionally, knowingly, recklessly or negligently, as the law defining the crime specifies, with respect to each other element of the crime, except as provided in subsection 4.  When the state of mind required to establish an element of a crime is specified as "willfully," "corruptly," "maliciously" or by some other term importing a state of mind, that element is satisfied if, with respect thereto, the person acted intentionally or knowingly.

Although 17-A M.R.S. § 34(4) enumerates circumstances in which a "culpable state of mind" need not be proved with respect to the elements of a crime, none of those circumstances applies to this crime.  Title 12 M.R.S. § 11453 imposes criminal liability on a person who "participate[s] in a hunt for deer during which an organized or planned effort is made to drive deer."  The statute is devoid of any *express* reference to a culpable mental state,[7] but logic dictates that the element of participation in "an organized or planned effort"

---

[7]  Although title 17-A of Maine's statutes, the Maine Criminal Code, is the only title to define culpable states of mind, *see* 17-A M.R.S. § 35 (2016), it is not the only title to impose criminal liability for statutory violations; the Legislature has often criminalized behavior without identifying a mens rea in laws located outside of the Criminal Code.  Many of the statutes found in title 12, Conservation, for example, criminalize behavior involving hunting and fishing or the operation of snowmobiles, all-terrain vehicles, and watercraft without specifying any culpable state of mind. *See, e.g.*, 12 M.R.S. § 10650 (2016); 12 M.R.S. § 12658 (2016); 12 M.R.S. §§ 13106-A(6)(B), (7)(B), (8)(B)(2), (9)-(11), (12)(B), (13)(B), (14)(C)(2), (15)(B)(2), (16)(B)(2), (17)(A)(2), (17)(B)(2), (18)(B), (19)(B)(2), (20), (21)(B), (22)(B), (24)(B), (25)(C)(2), (26)(B) (2016); *see also, e.g.*, 29-A M.R.S. § 2411 (2016) (criminalizing the operation of a motor vehicle while under the influence without specifying a mens rea).

implies knowledge.[8] *See* 17-A M.R.S. § 35(2) (2016) (providing that "knowingly" is a culpable mental state); *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621 ("In determining a statute's practical operation and potential consequences, we may reject any construction that is inimical to the public interest or creates absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." (quotation marks omitted)).

[¶12]   Our acknowledgement that section 11453 contains an implied mental state, however, is of no help to Siracusa.[9]   That a person must *know* that he is taking part in a deer drive to be guilty of that offense is apparent from the plain language of the statute, which requires the State to prove that a person has "participate[d]" in a "planned" or "organized" event.   12 M.R.S. § 11453(1).   The court's instruction to the jury, which closely tracked the language of the statute, therefore "informed the jury correctly and fairly in all necessary respects of the governing law."   *Mahmoud*, 2016 ME 135, ¶ 10,

---

8   We have long interpreted statutory language in a logical manner and in accordance with common sense.  *See State v. Brown*, 571 A.2d 816, 818 (Me. 1990) (interpreting a firearm statute "as common sense requires it to be"); *State v. Me. Cent. R.R.*, 517 A.2d 55, 57 (Me. 1986) (refusing to "stretch the statute beyond its common sense meaning"); *State v. Robinson*, 496 A.2d 1067, 1070-71 (Me. 1985) (interpreting a provision of a statute criminalizing rape in accordance with "[p]ractical, common sense considerations"); *Wing v. Morse*, 300 A.2d 491, 499 (Me. 1973) (applying a "common sense reading" to a comparative negligence statute).

9   Siracusa did not specifically request a jury instruction on the culpable mental state of "knowing."  In asking the court to instruct the jury that the State must prove intent, however, he did mention that the State should be required to prove his "knowing" participation.

147 A.3d 833 (quotation marks omitted); *see also State v. Deering*, 611 A.2d 972, 974 (Me. 1992) (stating "that a jury can determine the meaning of [the statutory term] 'consideration' by common sense" without further instruction from the court); *State v. Smith*, 618 A.2d 208, 210 (Me. 1992) (explaining that, in instructing the jury, "it is not obvious error to fail to define 'bodily injury' because a jury can understand its common sense, everyday meaning" and that "[n]ot every statutory phrase requires explanation").

[¶13]  Because the culpable mental state to be proved is included in the language of section 11453, the court did not err or prejudice the defense in refusing to instruct the jury more specifically that Siracusa must have acted knowingly or intentionally in order to find him guilty of unlawfully driving deer.[10]  *See Mahmoud*, 2016 ME 135, ¶ 10, 147 A.3d 833.

[¶14]  Accordingly, we affirm the judgment.

The entry is:

> Judgment affirmed.

---

[10]  The evidence presented was sufficient to support the verdict because the jury was free to reject Siracusa's testimony that he may have been "walking in figure eights," "looking up at the clouds," or sleeping rather than participating in a deer drive.  *See Ma v. Bryan*, 2010 ME 55, ¶ 7, 997 A.2d 755 (explaining that the jury is not required to accept any particular evidence presented to it).  The jury could have reasonably inferred from the evidence before it that Siracusa's actions constituted his knowing participation in a deer drive.  *See id.* (explaining that "the jury is permitted to draw all reasonable inferences from the evidence").

Thomas J. Connolly, Esq. (orally), Portland, for appellant Michael J. Siracusa Jr.

Kathryn Loftus Slattery, District Attorney, Anne Marie Pazar, Asst. Dist. Atty., and Justina A. McGettigan, Asst. Dist. Atty. (orally), Prosecutorial District 1, Alfred, for appellee State of Maine

York County Superior Court docket number CR-2015-1178
FOR CLERK REFERENCE ONLY