MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 35
Docket:      Pen-18-23
Argued:      February 4, 2019
Decided:     March 5, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ROBERT HANSLEY

GORMAN, J.

[¶1] Robert Hansley appeals from a judgment of conviction of murder, 17-A M.R.S. § 201(1)(A) (2018), and of elevated aggravated assault with a firearm (Class A), 17-A M.R.S. § 208-B(1)(A) (2018), entered by the trial court (Penobscot County, *Anderson, J.*) following a jury trial. Hansley argues that there is insufficient evidence to support his convictions and that the trial court erred by (1) denying his requested jury instruction on eyewitness identification and otherwise giving an inadequate instruction on the topic, and (2) instructing the jury in a way that overemphasized the definition of accomplice liability.[1] We affirm.

---

[1] Hansley also claims that the court erred by presenting the jury with an instruction on manslaughter. Hansley did not object to the manslaughter instruction at trial. *See State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032; *State v. Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147. Because the jury convicted him of murder, the manslaughter instruction played no part in its deliberations. We

## I. FACTS AND PROCEDURE

[¶2]  "Viewed in the light most favorable to the jury's verdict, the jury rationally could have found the following facts, which are supported by competent evidence, beyond a reasonable doubt."  *State v. McBreairty*, 2016 ME 61, ¶ 2, 137 A.3d 1012.

[¶3]  At approximately 3:30 a.m. on November 27, 2015, Hansley and Thomas Ferguson entered an apartment in Bangor.  Almost immediately after they arrived, one or both of them shot and killed Robert Kennedy and gravely injured Barry Jenkins.  Kennedy suffered seven gunshot wounds; one bullet perforated his aorta, killing him.  Jenkins suffered six gunshot wounds, but survived after being rushed to the hospital.

[¶4]  On December 30, 2015, the Penobscot County grand jury returned two indictments arising from these events.  The first indictment charged Hansley with one count of murder, 17-A M.R.S. § 201(1)(A), and one count of elevated aggravated assault (Class A), 17-A M.R.S. § 208-B(1)(A).  The second

---

do not find error in the court's manslaughter instruction, but even if we concluded otherwise, any error would be harmless.  *See State v. Bowman*, 588 A.2d 728, 732 (Me. 1991).

indictment charged Ferguson with the same crimes.[2]  Hansley pleaded not guilty to both charges.

[¶5]  The court conducted a seven-day jury trial in November and December of 2017.  Jenkins was among the witnesses called by the State.  He testified that both Hansley and Ferguson had "pulled out" guns, that he "figured both of them [were] shooting," but that he did not know "who shot who," and that he did not see Hansley shoot at him.  At the conclusion of the testimonial portion of the trial, Hansley asked that the jurors be given a specific instruction on eyewitness identification so that they could appropriately weigh and consider Jenkins's testimony in light of the "extremely high stress situation" of the shooting.  Although the court did not give the jury the precise instruction requested by Hansley, it did instruct the jurors that, in reviewing the testimony of all witnesses, they should consider—among other things—"whether the witness was under stress, including the stress of the event being witnessed while observing the person or persons committing a crime . . . ."

---

[2]  Ferguson also was indicted for tampering with a victim (Class B), 17-A M.R.S. § 454(1-B)(A) (2018), but this charge was dismissed by the State.  Ferguson opted to have his case heard by a judge rather than a jury.  In June of 2017, the court (*Anderson, J.*) found Ferguson guilty of murder and elevated aggravated assault.  It subsequently sentenced Ferguson to fifty years in prison on the murder count and twenty-five years in prison on the elevated aggravated assault count, to run concurrently with the sentence for murder.  We affirmed Ferguson's convictions in January of 2019.  *See State v. Ferguson,* 2019 ME 10, --- A.3d ---.

[¶6]  Hansley also argued that the evidence presented at trial did not generate an instruction on accomplice liability.  When the court correctly responded that such an instruction *had* been generated by the evidence presented, Hansley then asked for some additional instructions on that issue.  Although the court denied Hansley's specifically-requested instruction, it did instruct the jurors on the law concerning accomplice liability.

[¶7]  The jury found Hansley guilty of both murder and elevated aggravated assault.  The court entered a judgment on the verdict, imposing a forty-year term of imprisonment for the murder and a concurrent twenty-five-year term for the elevated aggravated assault.  Hansley timely appealed. *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

### A.  Jury Instructions

[¶8]  In general, we review jury instructions in their entirety to determine whether they presented the relevant issues to the jury fairly, accurately, and adequately, and we "will vacate the court's judgment only if the erroneous instruction resulted in prejudice." *Caruso v. Jackson Lab.*, 2014 ME 101, ¶ 12, 98 A.3d 221; *see also Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 503 (1st Cir. 2011).  "Prejudice occurs when an

erroneous instruction on a particular point of law affects the jury's verdict, or alternatively, when the instruction was so plainly wrong and the point involved so vital that the verdict must have been based upon a misconception of the law." *Caruso*, 2014 ME 101, ¶ 15, 98 A.3d 221 (citations omitted) (quotation marks omitted); *see also* Alexander, *Maine Appellate Practice* § 422(b) at 355 (5th ed. 2018). The appellant has the burden of demonstrating that an erroneous instruction affected the jury's verdict. *Caruso*, 2014 ME 101, ¶¶ 15, 18, 98 A.3d 221.

[¶9] More specifically, where an appellant argues that a trial court erred in denying his requested jury instruction, we will vacate the judgment only if the appellant can demonstrate that the denied instruction "(1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave." *State v. Hanaman*, 2012 ME 40, ¶ 16, 38 A.3d 1278.

1. Eyewitness Identification

[¶10] The United States Supreme Court has endorsed the use of jury instructions that discuss the potential risks of eyewitness identification. *See Perry v. New Hampshire*, 565 U.S. 228, 246 (2012). Recently, we revisited this issue and determined that the following instruction was "consistent with the

6

evolution of the law regarding eyewitness identification" and "a correct statement of the law":

> You should carefully consider any testimony relating to eye witness identification. For instance, you should consider the following in determining the accuracy of any eye witness identification: whether the accuracy of an eye witness identification may be affected by the fact that the person identified is of a different race, which may make it more difficult to identify an individual, whether the accuracy of an eye witness identification may be affected by the circumstances under which it was made, how much weight, if any, you should give to the amount of certainty expressed by a witness given that there may not be a correlation between the reliability of an eye witness identification and the amount of certainty expressed by the witness in making that identification. It's up to you to consider those issues and evaluate whether those affect any eye witness identification.

*State v. Mahmoud*, 2016 ME 135, ¶¶ 9, 15, 147 A.3d 833 (quotation marks omitted).

[¶11] We have not endorsed any other specific language for instructions on eyewitness identification. *See State v. Ashley*, 666 A.2d 103, 107 (Me. 1995) ("A trial court has wide discretion in formulating its instruction to the jury so long as it accurately and coherently reflects the applicable law."); *see also Perry*, 565 U.S. at 246 n.7 (listing several state and federal instructions on eyewitness identification). The *Maine Jury Instruction Manual* offers two representative models for instructions on eyewitness

identification, one modeled after Instruction 2.22 of the *Pattern Criminal Jury Instructions for the District Courts of the First Circuit* and the other on the instruction quoted above that we approved in *Mahmoud*, 2016 ME 135, ¶¶ 9, 15, 147 A.3d 833.  *See* Alexander, *Maine Jury Instruction Manual* § 6-22A at 6-41 cmt. (2018-19 ed.).

[¶12]  In this case, the instruction provided by the trial court did not follow verbatim either of the representative instructions in the *Maine Jury Instruction Manual*, but a verbatim recitation is not needed.  *See Ashley*, 666 A.2d at 107 ("While representative jury instructions often are helpful, it is neither sufficient nor advisable to rely solely on such an instruction."); Alexander, *Maine Jury Instruction Manual* § 6-22A at 6-42 cmt. ("In every case when giving [an eyewitness identification] instruction . . . the instruction will have to be adjusted to the facts and circumstances incident to the eyewitness identification for the case.").  The court's instruction here appropriately listed several factors that the jury could consider in evaluating the reliability of an eyewitness identification; many of these factors mirrored those listed in Hansley's proposed instruction and others mirrored those listed in the representative instructions.  *See* Alexander, *Maine Jury Instruction Manual* § 6-22A at 6-41.  When viewed in its entirety, the instruction fairly and

adequately apprised the jury of the relevant issues and governing law. *See Perry*, 565 U.S. at 233; *Caruso*, 2014 ME 101, ¶ 12, 98 A.3d 221; *Ashley*, 666 A.2d at 107.

[¶13] Furthermore, the trial court did not err when it denied Hansley's requested jury instruction because, although it may have stated the law correctly, Hansley's proposed instruction on eyewitness identification contained paragraphs explaining how memories are formed—information neither properly in evidence nor generated by any evidence presented. *See Hanaman*, 2012 ME 40, ¶ 16, 38 A.3d 1278. Additionally, Hansley's proposed instruction contained segments that would have amounted to the court commenting on the evidence: "Even if you are convinced that the witness believes his or her identification is correct, you still must consider the possibility that the witness made a mistake in the identification." Although defense counsel may wish to so argue in closing statements, a court may not give such an instruction, as it could be seen as a comment on specific evidence. *See id.*; *State v. Just*, 2007 ME 91, ¶ 15, 926 A.2d 1173 ("Comment by the court on the evidence during instructions is neither required nor appropriate in most instances. . . . [S]uch instructions giving special focus to particular evidence should be avoided." (citations omitted) (quotation marks omitted)).

[¶14] Finally, the trial court's instruction more than sufficiently covered the substance of Hansley's requested instruction on eyewitness identification. *See Hanaman*, 2012 ME 40, ¶ 16, 38 A.3d 1278. This is not a case involving an eyewitness who identifies a stranger: Jenkins knew Hansley and Ferguson before the shooting occurred, as did other eyewitnesses. Instead, this case, and Jenkins's testimony in particular, revolved around the issue of who shot Jenkins and Ferguson. Because of this, the court gave a more than adequate instruction on eyewitness identification; in fact, the court was not required to give such an instruction. *See Mahmoud*, 2016 ME 135, ¶ 14, 147 A.3d 833 ("We do not, however, conclude that the use of an eyewitness identification instruction is *required* in every case involving an eyewitness identification. For example, the eyewitness identification instruction would not ordinarily be generated in instances when the identified person is already known to the witness."). Overall, the trial court's instructions to the jury were thorough, fair, and accurate. The trial court therefore did not err in denying Hansley's proposed jury instruction.

2.    Accomplice Liability

[¶15]    Hansley also asserts that the trial court overemphasized accomplice liability in its instruction to the jury and that this had the effect of misleading the jury.

[¶16]   Pursuant to Maine law, "[a] person is an accomplice of another person in the commission of a crime if . . . [w]ith the intent of promoting or facilitating the commission of the crime, the person solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime."  17-A M.R.S. § 57(3)(A) (2018). "Any instruction on accomplice liability must avoid any suggestion that a conviction could be obtained by any lesser mental state [than intentional action]."  Alexander, *Maine Jury Instruction Manual* § 6-31 at 6-63 cmt.

[¶17]  Although Hansley's argument on this issue is cursory at best, he seems to be arguing that the court's instruction suggested that a conviction under an accomplice theory could be obtained by a lesser mental state.  We disagree.  Contrary to Hansley's implication, the court's instruction did not confuse the jury nor did it allow a verdict based on any mental state other than intentionality.  *See Caruso*, 2014 ME 101, ¶ 12, 98 A.3d 221; Alexander, *Maine Jury Instruction Manual* § 6-31 at 6-63 cmt.  In its instruction to the jury,

the court explained, on more than one occasion, that Hansley must have acted "with the intent of promoting or facilitating" the crime in order to be guilty under an accomplice theory. The trial court therefore did not err in its instruction on accomplice liability. *See Caruso*, 2014 ME 101, ¶¶ 12, 15, 98 A.3d 221.

B.     Sufficiency of the Evidence

[¶18]  Lastly, Hansley contends that there was insufficient evidence to support his conviction for murder and elevated aggravated assault. Specifically, Hansley argues that the verdict was based largely on Jenkins's testimony, which he argues was incredible and therefore not competent to support the conviction.

[¶19]  "When reviewing a judgment for sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally have found each element of the offense beyond a reasonable doubt. We defer to all credibility determinations and reasonable inferences drawn by the fact-finder, even if those inferences are contradicted by parts of the direct evidence." *State v. Cummings*, 2017 ME 143, ¶ 12, 166 A.3d 996 (citation omitted) (quotation marks omitted).

12

[¶20]   Relevant here, a person is guilty of murder if that person "[i]ntentionally or knowingly causes the death of another human being."  17-A M.R.S. § 201(1)(A).  A person is guilty of elevated aggravated assault if that person "[i]ntentionally or knowingly causes serious bodily injury to another person with the use of a dangerous weapon."  17-A M.R.S. § 208-B(1)(A).

[¶21]   Viewing the evidence in the light most favorable to the State, there is sufficient evidence from which the jury rationally could find, based on reasonable inferences drawn from direct and circumstantial evidence, that Hansley was, at a minimum, an accomplice to the murder of Kennedy and the elevated aggravated assault of Jenkins.  *See Cummings*, 2017 ME 143, ¶ 12, 166 A.3d 996.  Among other evidence, eyewitnesses placed Hansley in the room where the crime took place, two informants testified that Hansley admitted to the crimes, Hansley and Ferguson had a history of engaging in incidents of violence together, and forensic tests identified Hansley's DNA on the material used to wrap the murder weapon.  The jurors could have reached their verdict based on one of two permissible conclusions: that Hansley himself committed the murder and elevated aggravated assault, or that, with the requisite mental state, he solicited, aided, agreed to aid, or attempted to aid Ferguson in the commission of these crimes.

[¶22]  Even though Jenkins's testimony was at times contradictory, our review "does not intrude on the jury's role to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) (quotation marks omitted); *accord Cummings*, 2017 ME 143, ¶ 12, 166 A.3d 996.  The record at trial, when taken as a whole and viewed in the light most favorable to the State, supports the jury's finding that Hansley is guilty beyond a reasonable doubt of both charges.  *See Cummings*, 2017 ME 143, ¶ 12, 166 A.3d 996.

The entry is:

Judgment affirmed.

---

Tina Heather Nadeau, Esq. (orally), The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellant Robert Hansley

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot Unified Criminal Docket docket number CR-2015-4403
FOR CLERK REFERENCE ONLY