MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 126
Docket:      Yor-18-277
Argued:      April 9, 2019
Decided:     August 6, 2019
Revised:     November 21, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

CHRISTOPHER TODD HALL

SAUFLEY, C.J.

[¶1] The jury in this case was presented with evidence that Christopher Todd Hall, angry about the results of a court proceeding involving his children, lured the woman who had served as the guardian ad litem in that matter to a house—under false pretenses and disguised with a gray wig and a walker—where he attacked the woman with a cane that had a stun device in its handle, in an attempt to kidnap her. Hall now appeals from the judgment of conviction entered by the court (York County, *Delahanty, J.*) after the jury found him guilty of aggravated assault (Class B), 17-A M.R.S. § 208(1)(B) (2018); assault (Class C), 17-A M.R.S. §§ 207(1)(A), 1252(4-A) (2018); and attempted kidnapping with the intent to hold for ransom or reward (Class B), 17-A M.R.S. §§ 152(1)(B), 301(1)(A)(1), 301(3) (2018).

[¶2]  We are asked to construe several statutes to determine whether the court erred in its instructions to the jury and whether there was sufficient evidence for the jury to find, beyond a reasonable doubt, every element of each of the crimes of which Hall was convicted.  We affirm the judgment and remand only for further action by the State and the court to dismiss a fourth count on which the parties intended a dismissal after the court declared a mistrial.

## I.  BACKGROUND

[¶3]  Viewed in the light most favorable to the verdicts, the jury could rationally have found the following facts beyond a reasonable doubt.  *See State v. Hansley*, 2019 ME 35, ¶ 2, 203 A.3d 827.  On the evening of October 8, 2015, Hall used a woman's voice when he repeatedly called a professional mediator to lure her to a house in Arundel under the pretext of hiring her to mediate a family dispute.  Hall was upset with the mediator, who had, years earlier, served as guardian ad litem in a matter involving Hall's family.  Hall had spoken to a friend about a plan to kidnap people involved in that matter using an electric shock device so that he could extort money from them and use the money to leave the country with his children and their mother.

[¶4]  When the mediator arrived at the house in Arundel, Hall was disguised as an elderly man; he wore a wig and blazer and used a walker and

cane. He stood behind his van, which was parked in the driveway, and he gestured for her to park next to the van. Hall had a friend in the van who, by that point, had moved to the driver's seat. When the mediator opened the door to her car and swung her legs out, Hall attacked her with a cane that had a stun device in its handle capable of delivering an electric charge measuring up to 2,000 volts. He placed the cane between her legs, activated it one or more times, and put it in contact with her legs multiple times as she screamed and kicked. Leaning into the car, he tried to cover her mouth to prevent her screaming, and she grabbed the wig off his head, kicking until he took the wig and fled. Hall got into the passenger side of his van at the end of the driveway, his friend having already driven it toward the road, and he fled the premises with his friend.

[¶5] In December 2015, Hall was charged by indictment with aggravated assault (Class B), 17-A M.R.S. § 208(1)(B); assault (Class C), 17-A M.R.S. §§ 207(1)(A), 1252(4-A);[1] and two counts of attempted kidnapping—one count for attempted kidnapping with the intent to hold for ransom or reward (Class B), 17-A M.R.S. §§ 152(1)(B), 301(1)(A)(1), 301(3), and one count for attempted kidnapping by secreting and holding the victim in a place where she

---

[1] The court granted the State's later-filed motions to amend the indictment to provide accurate information regarding Hall's prior convictions alleged for purposes of increasing the class of the assault charge.

4

was not likely to be found (Class B), 17-A M.R.S. §§ 152(1)(B), 301(1)(B)(2), 301(3) (2018).

[¶6]  At Hall's jury trial in 2018, Hall chose to represent himself, but he had two attorneys acting as standby counsel.  The mediator testified regarding the events at issue as well as her injuries and recovery, including the effect of the attack on her mental health.  The State offered testimony from several witnesses, including a detective from the York County Sheriff's Office who testified about the stun cane device he had recovered using information provided by the person who had driven Hall's van on the night of the alleged crimes.[2]

[¶7]  Hall presented the testimony of several witnesses and his own testimony denying that he intended to kidnap the victim but expounding about how she and others had "stolen" his children based on lies.  He also testified that the voltage of the stun cane device was not deadly; that the back of his van had been full of items such that he could not have fit a person inside; that he

---

[2]  At trial, the State, without any objection from Hall at the time, had the detective activate the device one time in the courtroom, without bringing it in contact with anything, for purposes of demonstration.  Hall later moved for the court to instruct the jury to disregard the demonstration because the device had been taken apart and examined after the events in question.  Hall also moved for a mistrial based on the risk of unfair prejudice that, he argued, arose from the demonstration.  We discern no error or abuse of discretion in the court's rulings, which denied these motions, and we do not discuss the issue further.  *See State v. Nobles*, 2018 ME 26, ¶ 17, 179 A.3d 910; *State v. Boobar*, 637 A.2d 1162, 1166-67 (Me. 1994); *State v. Rich*, 395 A.2d 1123, 1131 (Me. 1978).

had worn a gray wig and carried the cane but had also used a walker as "a barrier so that she could never say that [he] went into her space"; and that the victim had come at him with an open hand and tried to kick him, resulting in the marks on her legs.

[¶8]  The court's jury instructions included statutory definitions of two terms at issue here.  The definition of "bodily injury" was provided because that term is part of the definitions of assault and aggravated assault.  *See* 17-A M.R.S. § 2(5) (2018); *see also id.* § 207(1)(A) ("A person is guilty of assault if . . . [t]he person intentionally, knowingly or recklessly causes *bodily injury* or offensive physical contact to another person." (emphasis added)); *id.* § 208(1)(B) ("A person is guilty of aggravated assault if that person intentionally, knowingly or recklessly causes . . . *[b]odily injury* to another with use of a dangerous weapon." (emphasis added)).

[¶9]  The definition of "serious bodily injury" was also provided because the aggravated assault statute employs the term "use of a dangerous weapon," which is defined as "use of a firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which, in the manner it is used or threatened to be used is capable of producing death or *serious bodily injury*."  17-A M.R.S. § 2(9)(A), (23) (2018) (emphasis added); *see also id.*

6

§ 208(1)(B) ("A person is guilty of aggravated assault if that person intentionally, knowingly or recklessly causes . . . [b]odily injury to another with use of a *dangerous weapon*." (emphasis added)).

[¶10] At the end of the court's instructions to the jury, Hall requested an additional instruction concerning the definition of "serious bodily injury." *Id.* § 2(23). Specifically, he asked the court to instruct the jury that the definition of "serious bodily injury," which includes "bodily injury . . . which causes . . . extended convalescence necessary for recovery of *physical* health," *id.* (emphasis added), precludes extended convalescence necessary for recovery of *mental or emotional* health. The court denied the request, concluding that its instruction had been complete and consistent with the statute.

[¶11] During deliberations, the jury sent a note asking for further definition of "serious bodily injury," including as to the meaning of "extended convalescence necessary for the recovery of physical health," and for instruction as to whether the use of *any* weapon would warrant a conviction of aggravated assault. *Id.* The court repeated the pertinent statutory definitions and informed the jury that it should rely on common sense in determining whether the conduct at issue met those definitions. It also instructed the jury, based on our interpretation of "extended convalescence" in *State v. Bowman*,

611 A.2d 560, 562 (Me. 1992), that, although no specific duration was provided in statute, convalescence meant "a gradual return to health after an injury or illness, or a period of time that is required . . . to regain your health." Hall objected to this instruction before and after it was delivered and argued that physical health should have been distinguished from mental or emotional health. The court overruled his objections.

[¶12] Later, the jury reported that it was having difficulty reaching a verdict on the fourth count, namely, attempted kidnapping with the intent to secret and hold the victim in a place where she was not likely to be found, but it had reached verdicts on the first three counts. The State and Hall agreed that the jury could deliver its verdicts on the first three counts and then the court would, if the jury found Hall guilty of the attempted kidnapping charge alleged in Count 3, declare a mistrial on Count 4. The jury found Hall guilty of Counts 1, 2, and 3 (aggravated assault, assault, and attempted kidnapping), and the court declared a mistrial on Count 4.

[¶13] After a sentencing hearing, the court sentenced Hall to ten years' incarceration for aggravated assault, with a concurrent five-year term for the assault conviction, and it sentenced Hall to a consecutive ten-year term for the

8

attempted kidnapping conviction.  The court also ordered Hall to pay multiple Victims' Compensation Fund payments totaling $105.

[¶14]  Although the State did not confirm the dismissal of Count 4, it appears to have been the intent of all involved that Count 4 be dismissed after the mistrial was declared.  Thus, we regard the lack of a formal dismissal as an oversight that can be corrected on remand, and we treat the judgment entered by the court as a final judgment ready for our review.

## II.  DISCUSSION

[¶15]  Hall argues that (A) the evidence does not support the convictions and (B) the court's jury instructions were inadequate.  We consider each argument in turn.

A.      Sufficiency of the Evidence to Support the Convictions

[¶16]  "When reviewing a judgment for sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether the fact-finder could rationally have found each element of the offense beyond a reasonable doubt.  We defer to all credibility determinations and reasonable inferences drawn by the fact-finder, even if those inferences are contradicted by parts of the direct evidence."  *Hansley*, 2019 ME 35, ¶ 19, 203 A.3d 827 (quotation marks omitted).

1.     Aggravated Assault

[¶17]  As charged here, "A person is guilty of aggravated assault if that person intentionally, knowingly or recklessly causes . . . [b]odily injury to another with use of a dangerous weapon."  17-A M.R.S. § 208(1)(B).  "'Use of a dangerous weapon' means the use of a firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which, in the manner it is used or threatened to be used is capable of producing death or *serious bodily injury*."  *Id.* § 2(9)(A) (emphasis added).  "'Serious bodily injury' means a bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of *physical health*."  *Id.* § 2(23) (emphasis added).

[¶18]  The undefined term at issue with respect to the aggravated assault conviction is "physical health."   In reviewing the language of a statute to determine the elements of a crime, "we first look to the plain language of the provisions to determine their meaning."  *State v. Hastey*, 2018 ME 147, ¶ 23, 196 A.3d 432 (quotation marks omitted).  "In considering the plain language of a statute, we construe any undefined words and phrases according to their common meaning."  *State v. Murphy*, 2016 ME 5, ¶ 7, 130 A.3d 401.  "Physical"

means "of or relating to the body . . . often opposed to *mental*," *Physical*, Webster's Third New International Dictionary of the English Language Unabridged (2002), or "Having a physiological basis or origin," *Physical*, American Heritage Dictionary of the English Language (5th ed. 2016).

[¶19]  Thus, finding Hall guilty of aggravated assault based on section 208(1)(B) required a finding that the stun device, in the manner in which Hall used it, was *capable* of causing death or either of the following:

- "serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ," or

- extended convalescence necessary for recovery of bodily, physiological health.

17-A M.R.S. § 2(23); *see id.* § 2(9)(A).

[¶20]  Had the State charged Hall with aggravated assault pursuant to 17-A M.R.S. § 208(1)(A), the State would have been required to prove that the defendant *actually caused* "[b]odily injury to another that creates a substantial risk of death or extended convalescence necessary for recovery of physical health."  Here, however, the State charged Hall with aggravated assault pursuant to section 208(1)(B) and therefore had to prove only "bodily injury," meaning, "physical pain, physical illness or any impairment of physical condition," *id.* § 2(5), resulting from the use of a weapon that was "*capable* of

producing death or serious bodily injury" in the manner that it was used, *id.* § 2(9)(A) (emphasis added).

[¶21]  As to the weapon at issue here—the stun cane device—the jury received evidence that included the following:

- The manufacturer's information indicated the device's capacity to deliver up to 1,000,000 volts.

- Tested in the laboratory, the device, after having been disassembled and reassembled, delivered between 850 and 2,000 volts, with the highest voltage being delivered upon initial activation.

- The scientist who tested the device used extensive safety precautions to protect himself from the device, which was "very dangerous" even at the measured voltage of 240.

- The victim experienced repeated contacts with the device, resulting in multiple burns on her body that did not heal for three weeks.

From this evidence,[3] the jury could rationally have found that the stun device used in the assault was a dangerous weapon *capable*, in the manner it was used, of causing either (1) "serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ" or (2) "extended convalescence necessary for recovery of physical health."  *Id.* § 2(23); *see id.* § 2(9).

---

[3]  Although Hall argued that the alteration of the stun device by opening it before testing undermined the proof of its voltage, the court properly left to the jury the task of assessing the weight and credibility of the evidence. *See State v. Davis*, 2018 ME 116, ¶ 29, 191 A.3d 1147.

12

## 2.    Assault

[¶22]    "A person is guilty of assault if . . . [t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person."  *Id.* § 207(1)(A).  "'Bodily injury' means physical pain, physical illness or any impairment of physical condition."  *Id.* § 2(5).  Here, there is more than enough evidence to demonstrate that Hall intentionally—i.e., with the conscious object to do so, *see* 17-A M.R.S. § 35(1)(A) (2018)—caused the victim physical pain and impairment of her physical condition.  *Id.* §§ 2(5), 207(1)(A).

## 3.    Attempted Kidnapping

[¶23]    Pertinent here, a person is guilty of attempted kidnapping if the person engages in conduct that in fact constitutes a substantial step toward "restrain[ing] another person with the intent to . . . [h]old the other person for ransom or reward," with awareness that it is practically certain that the person's conduct will result in the restraint and holding for ransom and reward. *Id.* § 301(1)(A)(1); *see* 17-A M.R.S. §§ 35(2)(A), 152(1) (2018).  Here, there was evidence that Hall had planned to restrain the victim and hold her for ransom to raise money so that he could gather his biological children and their mother and abscond to another country.  Combined with evidence that he lured the victim to a specific location, attacked her in her car beside his van, and fled only

after she fought him off, there was sufficient evidence for the jury to have found beyond a reasonable doubt that he had taken substantial steps toward the kidnapping as charged in Count 3. *See id.* §§ 35(2)(A), 152(1), 301(1)(A)(1).

B. Jury Instructions

[¶24]    Hall argues that the court erred in denying his requested instructions regarding the meaning of (1) physical health and (2) the use of a dangerous weapon.

1. Instruction on the Meaning of "Physical Health"

[¶25]  Hall contends that the court erred in refusing to instruct the jury that "extended convalescence necessary for recovery of physical health"—part of the definition of "serious bodily injury," *id.* § 2(23)—does not include convalescence to recover emotional or mental health.

[¶26]  "We will vacate a judgment based on a denied request for a jury instruction if the appellant demonstrates that the requested instruction (1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave. In addition, the court's refusal to give the requested instruction must have been prejudicial to the requesting party." *State v. Hanaman*, 2012 ME 40, ¶ 16, 38 A.3d 1278 (citation omitted).

14

[¶27]  As noted above, Hall was charged with aggravated assault based on the use of a dangerous weapon—a weapon that, "in the manner it is used or threatened to be used is capable of producing death or *serious bodily injury*." 17-A M.R.S. § 2(9)(A) (emphasis added).  "Serious bodily injury" means "a bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or *extended convalescence necessary for recovery of physical health*."  *Id.* § 2(23) (emphasis added).

[¶28]  "Physical health" is not defined by statute.  "Not every statutory phrase requires explanation," however.  *State v. Smith*, 618 A.2d 208, 210 (Me. 1992).  The focus is on "whether the jury would have reasonably understood the common sense meaning of the term."  *Id.* (quotation marks omitted).  The jury is ordinarily entrusted to determine the common meaning of words, *see State v. Siracusa*, 2017 ME 84, ¶ 12, 160 A.3d 531; when a term is not defined in a statute, a jury can generally determine the meaning of the term by common sense, *see State v. Deering*, 611 A.2d 972, 974 (Me. 1992).

[¶29]  Here, the statutory terms were "sufficiently covered" by the instruction that the court gave, which provided the statutory language regarding *physical* health—a term for which the jury could determine the

meaning by using common sense.[4] *Hanaman*, 2012 ME 40, ¶ 16, 38 A.3d 1278. Furthermore, Hall has not shown prejudice arising from the court's refusal to give the requested instruction. *See id.*

    2.    Instruction on the Use of a Dangerous Weapon

[¶30]  Hall contends that the court erred in instructing on the use of a dangerous weapon because the stun cane device is not a dangerous weapon as a matter of law.  He contends that, because the cane is an "electronic weapon" as defined in a separate criminal statute, it cannot also be a "dangerous weapon" because, by definition, an electronic weapon emits an "electrical current, impulse, wave or beam" that is "designed to have a *disabling* effect upon human beings."  17-A M.R.S. § 1004(2) (2018) (emphasis added).

[¶31]  Use of an electronic weapon may also constitute the use of a dangerous weapon if it meets the statutory definition regarding the use of a dangerous weapon.  "'Use of a dangerous weapon' means the use of a firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which, in the manner it is used or threatened to be used is capable of producing death or serious bodily injury." *Id.* § 2(9)(A). Conflicting evidence was offered regarding whether the stun device, as used, had the capacity to

---

[4] *See supra* ¶¶ 18-19.

"create[] a substantial risk of death or . . . cause[] serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health." *Id.* § 2(23). Because some of that evidence, if believed, satisfied the definition of "dangerous weapon," the court did not err in determining that the evidence generated the instruction on aggravated assault with use of a dangerous weapon. *See id.* §§ 2(9)(A), (23), 208(1)(B); *Hansley*, 2019 ME 35, ¶ 9, 203 A.3d 827.

[¶32] The existence of a separate crime—not charged here—for intentionally, knowingly, or recklessly using an electronic weapon on another person, 17-A M.R.S. § 1004(1) (2018), does not preclude the jury's finding that the stun cane as Hall used it was a dangerous weapon. The stun cane could be both "a portable device or weapon from which an electrical current, impulse, wave or beam may be directed, which current, impulse, wave or beam is *designed to have a disabling effect* upon human beings," and an item that could, as used, constitute a dangerous weapon capable of inflicting serious bodily injury. *Id.* § 1004(2); *see id.* §§ 2(9)(A), 208(1)(B) (emphasis added). For instance, although the single administration of a shock to disable a person would satisfy section 1004, the repeated administration of shocks, possibly

with reactivation between those shocks that would increase the voltage initially delivered upon the next contact with the person, would also satisfy section 208(1)(B)—the aggravated assault statute.

[¶33]   The court did not err in its instructions, and the jury could rationally reach its findings based on the instructions given and the evidence presented at trial.

The entry is:

> Judgment affirmed.   Remanded for further proceedings to dismiss Count 4.

---

David Paris, Esq. (orally), Bath, for appellant Christopher Todd Hall

Kathryn L. Slattery, District Attorney, and Kyle M. Myska, Asst. Dist. Atty. (orally), Prosecutorial District 1, Alfred, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2015-420
FOR CLERK REFERENCE ONLY