STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss                                     DOCKET NO. 17-413


Jesse P. Marquis                    )
                 Petitioner         )
                                    )
                                    )
                                    )
v.                                  )                    DECISION
                                    )
                                    )
                                    )
                                    )
State of Maine                      )
                 Respondent         )


Pending before the court is Jesse P. Marquis' Petition seeking Post-Conviction Review of

his conviction for Intentional or Knowing Murder (17-A M.R.S. § 201 (1)(A)). For the reasons

set forth herein, the court denies the petition.

## BACKGROUND

On July 11, 2014, the Aroostook County Grand Jury returned an indictment against the

Petitioner charging him with the Intentional and Knowing Murder of Amy Theriault. The

Indictment reads:

The Grand Jury Charges That:

On or about May 31, 2014, in Aroostook Cunty, Maine, Jesse P. Marquis did
intentionally or knowing cause the death of Amy Theriault, with the use of a firearm,
namely a Remington Model 710 bolt action 30-06 rife (serial number 71128290), all in
violation of 17-A M.R.S. § 201 (1)(A) and 17-A M.R.S. § 1158-A(1)(B).


The case proceeded to trial before a jury on June 14, 2016. On June 17, 2016, the jury

returned a verdict of Guilty of Murder and returned a further finding that the Petitioner used a

1

firearm in the commission of his crime. On July 6, 2016, the court sentenced the Petitioner to life in prison.

The Petitioner appealed his conviction to the Maine State Supreme Court. On May 27, 2017 the Law Court denied the Petitioner's appeal and affirmed his conviction.[1] This Petition followed. On February 27, 2019, the court conducted an evidentiary hearing on the petition. The court received the last of the parties' written arguments on April 18, 2019. The court has now had the opportunity to consider the evidence presented and the arguments of counsel. As reflected in the Petitioner's post hearing argument, the Petitioner raises two issues. He contends that his trial counsel provided him with constitutionally deficient assistance of counsel first, by abrogating his right to testify and second, by failing to pursue a defense of *adequate provocation*. The court deems other arguments presented in the petition to be waived.

## STANDARD OF REVIEW

To prevail in a post-conviction proceeding based on an alleged constitutional deprivation of the effective assistance of counsel, the petitioner has the burden of proof and must demonstrate two points; first, "that counsel's representation fell below an objective standard of reasonableness," and second, that "errors of counsel actually had an adverse effect on the defense." There is thus both a "performance" prong and a "prejudice" prong to the inquiry. The court may consider either prong first; if the petitioner fails to demonstrate "prejudice", it is unnecessary for the court to address the issue of whether trial counsel's performance was deficient. Francis v. State, 2007 ME 148, ¶ 6, 938 A.2d 10. These elements of an ineffective assistance case, when proved, constitute a "showing that counsel's errors were so serious as to

---

[1] See State of Maine v. Jesse Marquis, 2017 ME 104, 162 A.3d 818.

2

deprive the defendant of a fair trial, a trial whose result is reliable." Theriault v. State of Maine, 2015 ME 137, ¶14

Thus, in order to prove that one has been deprived of their constitutional right to the effective assistance of counsel, a petitioner must prove both a "performance" prong and a "prejudice" prong by a preponderance of the evidence. A failure of proof on either will lead to a denial of the petition.

In Roberts v. State of Maine, 2014 ME 125, ¶23,103 A.3d 1031,1039, the Law Court indicated that in order to prove that counsel's performance was constitutionally deficient,

> "a defendant must show that counsel's representation fell below an objective standard of reasonableness. The question is whether the counsel's performance fell within the wide range of reasonable professional assistance that a competent criminal defense counsel could provide under prevailing professional norms. The *Strickland* test compels us to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time." (Internal citations and punctuation omitted.)

In *Theriault,* the Law Court discussed the prejudice prong and recognized that there can be cases, albeit rare ones, where counsel's performance has been so deficient that it amounts to a constructive denial of the assistance of counsel and in such extreme cases of ineffectiveness, the petitioner is relieved of the burden of affirmatively proving prejudice because in such cases a complete failure of representation can be legally presumed to have occurred.

Accordingly, with regard to the issue of "prejudice", except in those rare instances of extreme ineffectiveness, the petitioner must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The Law Court was careful to point out that its reference to "probability" should not restrict a court's analysis to a *quantitative* inquiry and that it should also extend to a *qualitative* inquiry, that is

3

one that involved an analysis of whether counsel's performance was such that it undermined confidence in the outcome of the proceeding and rendered that outcome unreliable. *Id* at ¶19.

Thus, "prejudice" can be established where it can be demonstrated that counsel's errors more likely than not actually altered the outcome of the case and "prejudice" can also be established where, although one may not be able to say that it changed the likely outcome of the case, questions of fundamental fairness still remain and must be considered. This means that "prejudice" can be established by showing that counsel's performance was such that it undermines confidence in the reliability of the outcome.

Maine's jurisprudence pertaining to the question of "ineffective assistance of counsel" draws extensively from Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

Among the relevant principles that Justice O'Connor set forth in her opinion in *Strickland* were the following:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstance, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client the same way. *Id* at 689.

## DISCUSSION

**1. The abrogation of the Petitioner's right to testify.**

4

The Petitioner contends that his trial counsel abrogated his right to testify by pressuring him to forgo that right. He stipulated at the hearing of this matter that his trial counsels' recommendation that he not testify was reasonable advice under the circumstances. He contention is that his trial counsel deprived him of his freedom of choice by overcoming his free will. He has thus argued that his case is one of those rare cases where counsel's performance was so deficient that it gives rise to a "presumption of prejudice" thereby obviating the need to offer proof of any actual or implied "prejudice".

In order to prevail on this point, the Petitioner must prove what he is contending. He has failed to do this. Although he acknowledges that on multiple occasions prior to trial, he had discussed the subject of his testifying or not with his attorneys and although he acknowledges that his attorneys told him it was his decision and that all that they could do was to make recommendations to him, he testified at the hearing that Attorney Smith exacted a *promise* from him that he would not testify at trial. Although Attorney Smith acknowledged that at various times during the course of his representation, the Petitioner expressed a desire to testify, Attorney Smith also explained that he went over the reasons for his recommendation with the Petitioner and that the Petitioner accepted his advice.

The Petitioner testified that as the trial progressed, he could see that his case was not going well. The Petitioner testified that his trial was not what he expected it to be and that as the trial progressed, he began to feel like a "sitting duck." Undoubtedly, he is not the first defendant faced with compelling State's evidence to have experienced this perception. He testified that he didn't feel like he had a full and fair opportunity to change his mind because he did not want to upset his lawyer who had extracted a promise from him regarding his not testifying at court.

Both of his trial counsel denied extracting any kind of promise from the Petitioner regarding the prospect of the Petitioner testifying at his trial or overbearing the Petitioner's free will to choose to testify or not. The court rejects the Petitioner's testimony on this point and accepts Attorney Smith's testimony. State's Exhibit # 1 supports Attorney Smith's version of events relating to this issue. On or about April 25, 2016, more than six weeks before trial began, Attorney Smith responded to a letter that the Petitioner had sent to him as follows:

2. *"I still believe murder is the wrong charge because I would never risk all of this and more without being provoked or accidently."*[2]

I understand that you are suggesting that the incident between the two of you occurred when she stuck you with a knife at the door[3]. This has always been my understanding, and if you insist, you can take the stand and tell your version of events. It is my recommendation (underlining appears in original letter) to you that the rest of your story will not hold up under close scrutiny and the prosecutor will make you look bad on cross-examination. Having said that, it is your (underlining appears in original letter) right to testify or not to testify and, as I have repeatedly said, I cannot stand in your way. I can simply recommend. If you wish to proceed in this fashion, I am absolutely willing to do so.

Attorney Smith further responded to the Petitioner as follows:

---

[2] Italicized statement contained within Petitioner's correspondence to counsel.

[3] The court notes that at hearing of this matter, the Petitioner testified that he did not become "enraged" until he followed the decedent into an adjoining room and she attempted to attack him with a pair of scissors. These two versions appear to the court to be inconsistent.

*5. "I am upset that people, including the AAG think they know what happened. I wish I would have worn a camera that day. I was attached (sic) at the door and in the bedroom. It could have been me dead not Amy"[4].*

I understand from this statement that you wish to assert a claim of self-defense and this has been part of our strategy right along. Implicit in your statement is that you would want to testify. For the reasons stated above, this is a bigger problem. Again, you have a perfect right to testify as you to and, obviously there was no camera that day; and so, your testimony would be the closest thing we have to such a thing. If you want to testify, I am perfectly willing to facilitate that.

State's Exhibit #1, clearly supports Attorney Smith's testimony that he was clear with the Petitioner about his right to testify and he was clear with the Petitioner that if he wished to testify he could do so, although it would be contrary to Attorney Smith's advice.

Additionally, at the close of the State's case, and after the court had taken a recess to afford the Petitioner the opportunity to consult privately with his attorney's, the court spoke with the Petitioner about his right to testify as follows[5]:

THE COURT: [First sentence omitted.] That means that we're essentially at the end of the evidentiary presentation that the State intends to make, and that then leads us to the question of whether or not the Defense intends to introduce any evidence. And it's been my practice to make sure that the defendant understands that he has absolutely no burden of presenting any evidence

---

[4] Italicized statement contained within Petitioner's correspondence to counsel.

[5] See Trial Transcript, Vol. 3, pages 182 to 184.

whatsoever. He has no burden to call witnesses. He has no burden even to give his testimony. But the way we conduct our trial proceedings, we always want to make sure the defendant understands that he has the opportunity to present evidence if he wishes to do.

So, Mr. Marquis, this is a point in the trial proceedings when you need to make a determination. Again, this is your case. You have Mr. Smith here to help you, Mr. Umphrey here to help you; but it's really your case, and you are the one who makes ultimately these important decisions. And I just want to make sure that you understand that it's completely up to you whether you present any kid of evidence whatsoever.

You should understand that if you choose not to present evidence, for example, if you should choose not to testify, part of my instructions will emphasize very clearly to the jury that they are to assign no kind of adverse inference and no adverse weight whatsoever to the fact that you have exercised your constitutional rights in a particular manner, all right. Having said all of that, no one can ever know with certainty whether it's a good idea to testify or bad idea to testify. Mr. Smith, Mr. Umphrey, they do not have a crystal ball. I don't have a crystal ball. Mr. Alsop doesn't have a crystal ball. None of us can predict the future; and, therefore, the decision to testify or not always is accompanied by a measure of uncertainty. It's just the fact of life. You should understand, again, if you do not testify, I will be giving a clear instruction to the jury that they are not to take that into account or assign it any evidentiary weight

8

whatsoever. In the event you were to testify, that as you observed, every witness who takes the stand and is asked questions on direct examination then becomes subject to cross-examination by Mr. Alsop. Okay. I presume this is an issue that you have had a chance to talk over with both Mr. Smith and Mr. Umphrey.

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Do you need any additional time whatsoever? Because I'm going to give it to you if you'd like to have it.

THE DEFENDANT: No, your Honor.

THE COURT: All right. And, Mr. Marquis, do you know then what you decision will be? Will there be any evidence presented by the Defense?

THE DEFENDANT: No, your Honor.

Accordingly, the court finds that the Petitioner has failed to prove his contention that either or both of his attorneys abrogated his right to testify and therefore, he does not benefit from any presumption of prejudice. Moreover, he has failed to prove that either or both of his attorneys were deficient in their "performance" or that he suffered "prejudice" as those concepts are set forth above.

## 2. The waiver of the *adequate provocation* defense[6].

---

[6] 17-A M.R.S.§§ 203(1)(B),201(4) 101(2) lay out the governing law on *adequate provocation* as follows:

§ 203(1)(B):1. A person is guilty of manslaughter if that person: B. Intentionally or knowingly causes the death of another human being under circumstances that do not constitute murder because the person causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation. Adequate provocation has the same meaning as in section 201, subsection 4. The fact that the person causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation constitutes a mitigating circumstance reducing murder to manslaughter and need not be proved in any prosecution initiated under this subsection.

§ 201(4) provides: For purposes of subsection 3, provocation is adequate if: A. It is not induced by the person; and B. It is reasonable for the person to react to the provocation with extreme anger or extreme fear, provided that evidence demonstrating only that the person has a tendency towards extreme anger or extreme fear is not sufficient, in and of itself, to establish the reasonableness of the person's reaction.

9

The Petitioner next contends that his trial counsel constructively denied him the assistance of counsel by failing to pursue a defense of *adequate provocation* that would have resulted in a conviction for manslaughter rather than murder. The Petitioner further contends that this error was so egregious that ineffective assistance of counsel should be legally presumed without any affirmative proof. In this court's view, this is not one of those *rare*[7] cases of extreme ineffectiveness.

To the contrary, it is a case where trial counsel made a well-reasoned professional judgment about a trial strategy that offered the Petitioner the best chance of an effective defense and that was to pursue a theory that the Petitioner had acted in self-defense. Trial counsel was successful in obtaining a jury instruction regarding self-defense along with the companion instruction that the burden was upon the State to disprove that the Petitioner had acted in self-defense. Had this strategy succeeded, the Petitioner would have been completely exonerated.

It is not at all established that an instruction on adequate provocation would even have been generated by the evidence if that evidence was the same as that contained within the Petitioner's testimony at hearing of this matter[8].

The Petitioner testified in essence that he went to the decedent's residence[9] at approximately 6:00 am on the day following the day on which the decedent had apparently advised that she no longer wanted to continue with the relationship. He testified that he went back to get his laptop and some keys that he used in connection with his employment. The decedent came to the door and told him to wait. She then went and retrieved his laptop and a

---

§ 101(2) provides: Where the statute explicitly demonstrates a matter as an "affirmative defense," the matter so designated must be proved by the defendant by a preponderance of the evidence.

[7] See Theriault v. State of Maine, 2015 ME 137, ¶17, 125 A.3d 1163,1169.

[8] The Petitioner testified that the testimony that he offered at hearing of this matter would have been the same testimony he would have given at his trial.

[9] The Petitioner contended that the residence had been his as well and that he felt that he retained rights permitting him to be upon the premises and to enter into the residence.

10

sweater with the keys he sought in a pocket of the sweater. The Petitioner wanted to talk; the decedent told him that she didn't want to talk and that she had to get ready to go to work. The Petitioner testified that he became curious about a towel that he observed hanging on the door as though it was concealing something and that he wanted to see what might be behind it. This led him to put his hand out presumably to prevent the decedent from closing the door. At this point, the Petitioner testified that the decedent cut him on his knuckle with a knife. She dropped the knife and moved away. He entered the residence; picked up the knife and followed the decedent into the back room.

The Petitioner testified that he was more upset, shocked and surprised by the cut to his knuckle and that he didn't become enraged until he had followed her into a back room where he maintains that the decedent came after him with a pair of scissors. At that point, the Petitioner was still in possession of the knife that he had picked up. He then stabbed the decedent approximately eleven (11) times including one wound that resulted in the tip of the knife breaking off in the decedent's skull. He testified that she somehow got possession of a rifle and loaded it. He testified that he grabbed the gun away from the decedent and although he agreed that the decedent was no longer a threat to him, he nonetheless then shot her in the chest at point blank range.

The Law Court has indicated that in order to generate an instruction on the statutory affirmative defense of *adequate provocation*, the evidence must be legally sufficient to support an objectively reasonable conclusion that the victim provoked the defendant to such an extent that the defendant's culpability in the use of deadly force against the victim was reduced. State v. Kimball, 2016 ME 75,¶11,1139 A.3d 914,918.

11

According to what the Petitioner had previously told his attorneys, he became enraged when he was cut on his finger. According to his testimony at the hearing, he said that his *adequate provocation* was not that he suffered a wound to his hand. He said he was more "shocked and surprised" in response to this event. He testified that he didn't become enraged until he had pursued the decedent into the back room where he maintains that she threatened him with a pair of scissors. He acknowledged that she did not cut him with these.

It seems worthy of note that the decedent had told him to wait at the door and that she would retrieve those things that he had come for. It was the Petitioner who followed her into the home, albeit under what he maintains was a claim of right.[10] It was therefore, the Petitioner who placed himself in the circumstance that he contends led to his becoming enraged.

In State v. Lockhart, 2003 ME 108, ¶42, 830 A.2d 433, the Law Court stated that a heated argument, accompanied by slapping and hitting was insufficient to establish *adequate provocation*. It would seem to follow that a cut to a finger, even one accomplished with a weapon that causes mere "shock and surprise" or a threat by scissors without any injury would not be objectively reasonable causes for the kind of extreme anger that a defendant needs to demonstrate before an *adequate provocation* instruction is given. In State v. Hanaman, 2012 ME 40, ¶26, 38 A.3d 1278, 1284, the Law Court found that the defendant who had instigated or created the situation that resulted in the alleged provocation by initiating the encounter with the victim to discuss their relationship, thereby placing himself in a situation that would arouse his anger and fear was not entitled to an instruction on *adequate provocation*.

In this case, and accepting the Petitioner's testimony for argument's sake only that the decedent had cut him with a knife on his finger at the entry door and further accepting for

---

[10] The Petitioner had been residing with the decedent in the home for approximately two years and regarded himself as a tenant with a right of entry.

12

argument's sake his testimony that he became enraged when threatened with a pair of scissors, it seems unlikely to this court that an assault causing only " shock and surprise" could reasonably be considered to create the kind of extreme anger necessary to support an instruction for *adequate provocation* manslaughter. Moreover, in following the decedent into the home, even if he had a colorable claim of right to be in the home, it was the decedent, intent on discussing the termination of his relationship with the decedent, who placed himself in the circumstance that led to whatever provocation there might have been. For these reasons, it seems doubtful to this court that the Petitioner would have been entitled to any instruction on *adequate provocation.*

That said, the court is mindful of Justice O'Connors observation that a court's scrutiny of trial counsel's performance must be highly deferential and that there are countless ways to provide effective assistance of counsel in any given case and that even the best criminal defense attorneys would not defend a particular client the same way. (See *Strickland,* supra)

In this case, trial counsel chose to pursue a strategy of self-defense over *adequate provocation.* Although not ultimately successful in securing an acquittal, they were successful in securing a jury instruction that placed the burden of proof upon the State. Had they pursued the *adequate provocation* theory, the burden of proof would have been upon the Petitioner and could not have been pursued without placing the Petitioner upon the stand in order to obtain his testimony, the only evidence of provocation of any sort. Trial counsel had good reason to avoid placing the Petitioner upon the stand and subjecting him to cross examination.

Accordingly, the court finds trial counsel's election of defense strategy to have been the eminently better choice and well within the wide range of professional assistance of which Justice O'Connor wrote. Mindful that the Petitioner bears the burden of proving both the "performance" prong and the "prejudice prong" of an ineffective assistance of counsel claim, the

court concludes that the Petitioner has failed to prove that either of his trial counsel's performance was substandard. He has also failed to prove "prejudice" as the result of his trial counsel's performance. His trial counsel made reasonable and professional choices of trial strategy and there is nothing in this case that would lead the court to find that the result would have been different had trial counsel pursued the strategy that Petitioner now contends was the obviously better choice and there is nothing in this case that in any way undermines confidence in the reliability of the result of the Petitioner's trial.

The Petition is denied.

August 7, 2019

Justice, Superior Court (Active Retired)